IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TRACY LIN NOE CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 320-001 |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Commissioner of Social Security terminating her Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.   BACKGROUND

Plaintiff protectively applied for SSI on September 23, 2004, alleging a disability onset date of May 25, 2004. Tr. ("R."), p. 253. The Administrative Law Judge ("ALJ") issued a fully favorable decision on October 27, 2006, the comparison point decision ("CPD") for the current case. R. 249-58. At the time of the CPD, Plaintiff's bilateral ankle instability met Listing 1.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 11. Since the CPD, Plaintiff had numerous mental and physical impairments, and particularly relevant to the limitations found by the ALJ in the

current appeal, the impairments included bilateral carpal tunnel syndrome, bilateral wrist arthritis, and status post right wrist ganglion surgery. R. 11. Pursuant to a continuing disability review, the Social Security Administration determined medical improvement had occurred to the point Plaintiff's disability ceased as of November 30, 2012. R. 259-60, 310-12, 330-34. Plaintiff was thirty-one years old at her alleged disability onset date and forty years old on the date her disability was determined to have ceased. R. 11, 253, 259.

Plaintiff requested a hearing before an ALJ, resulting in hearings held December 16, 2015, June 13, 2016, and September 19, 2016. R. 52-151, 210-48. Particularly relevant to the current appeal, John Kwock, M.D., testified as a medical expert at the September 19, 2016 hearing regarding Plaintiff's manipulative limitations. R. 67-82. The ALJ issued an unfavorable decision on November 29, 2016, concluding Plaintiff's disability ended on November 30, 2012, and she had not become disabled again since that date. R. 261-84. On September 25, 2017, the Appeals Council ("AC") granted Plaintiff's request for review and remanded the case to the ALJ. R. 285-88. Upon remand, the ALJ held a hearing February 28, 2018, and issued an unfavorable decision dated May 15, 2018. R. 6-38, 152-94.

In determining whether Plaintiff's disability had ended, the ALJ applied the sequential process required by 20 C.F.R. § 416.994 and found:

1. Since November 30, 2012, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 29 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.925 and 416.926).

2. Medical improvement occurred on November 30, 2012 (20 C.F.R. § 416.994(b)(1)(i).[1]

---

[1]Medical improvement is defined as "any decrease in medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence

3. The medical improvement is related to the ability to work.

4. By November 30, 2012, the claimant's CPD impairments no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 C.F.R. § 916.994(b)(2)(iv)(A)).

5. Since November 30, 2012, the claimant has continued to have the following severe impairment(s) or combination of impairment(s):  depression, degenerative disc disease of the cervical spine post-surgical procedure, bilateral carpal tunnel syndrome, bilateral wrist arthritis, bilateral knee arthritis, migraine headaches, left ankle tendon tear, post left knee arthroscopic surgery, seizure disorder, generalized anxiety disorder, bipolar disorder, rule out schizoaffective disorder, borderline intellectual functioning, obesity, asthma, and antisocial personality disorder.

6. Since November 30, 2012, based on the current impairments, the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except she is limited to frequent pushing/pulling with the bilateral upper extremities; frequent balancing and stooping; no kneeling crouching, or crawling; occasional climbing of ramps and stairs but no climbing of ladders, ropes, or scaffolds; occasional reaching overhead bilaterally; frequent handling and fingering with the bilateral hands; occasional exposure to pulmonary irritants (e.g., fumes, odors, dust, gases, etc.); and no exposure to the extremes of heat and cold, vibration, and hazardous conditions (e.g., unprotected heights, dangerous machinery, etc.).  Further, the claimant is limited to simple, routine tasks involving no more than simple, short instructions, simple work-related decisions, few workplace changes, and no work at production rate, assembly-line-type work.[2]  The claimant has no past relevant work (20 C.F.R. § 416.965).

---

which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).  20 C.F.R. § 416.994(b)(2)(i).

[2]"Light work" is defined as:
lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 416.967(b).

> 7. Since November 30, 2012, considering the claimant's age, education, work experience, and RFC based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy, including cafeteria attendant, cleaner/house keeper, and ticket taker (20 C.F.R. §§ 416.960(c) and 416.966). Therefore, the claimant's disability ended on November 30, 3012, and she has not become disabled again since that date (20 C.F.R. § 416.994(b)(5)(vii)).

R. 11-27.

When the AC denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the ALJ erred by failing to (1) formulate an RFC properly accounting for the opinion Dr. Kwock; and (2) consider awarding a closed-end period of disability. See doc. no. 13 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 14.

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.   DISCUSSION

Plaintiff first argues the ALJ would have found her disabled had the ALJ accorded proper weight to Dr. Kwock's opinion regarding Plaintiff's ability to use her bilateral upper extremities occasionally. Pl.'s Br., pp 10-12. Second, Plaintiff argues that if the ALJ found Dr. Kwock's opinion invalid based on improvement subsequent to Dr. Kwock's 2016

5

testimony, the ALJ should have considered a closed period of benefits. Id. at 12-13. As discussed below, neither argument forms a valid basis for reversal or remand.

    A.    **Formulating Plaintiff's RFC**

RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).

    B.    **Standard for Evaluating Medical Opinions**

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3)

6

treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).

Although the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion, Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985), he "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Moore, 405 F.3d at 1212 (finding no reversible error in discounting treating physician's opinion where ALJ articulated specific reasons for doing so). When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Additionally, for claims filed prior to March 27, 2017, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians and the opinions of treating physicians be given more weight than non-treating physicians. See 20 C.F.R. § 416.927(c)(1)-(2). Lastly, a statement by a medical source that a clamant is "disabled" or "unable to work" is not binding on the Commissioner, as the administrative decision is based on a review of all the medical findings and other evidence supporting or contradicting a medical source's statement on disability, and the ultimate determination on disability is reserved to the Commissioner. Id. § 416.927(d).

7

### C. The ALJ Properly Evaluated the Opinion of Dr. Kwock in Formulating the RFC

Dr. Kwock testified as a medical expert at the administrative hearing held on September 19, 2016. R. 60-82. At that time, Dr. Kwock had been testifying at Social Security hearings for approximately one and a half years and categorized himself as a general orthopedist. R. 63-64. Having reviewed Plaintiff's records, Dr. Kwock identified early mid-carpal osteoarthritic changes in both of Plaintiff's wrists as a severe impairment that would cause "mild, very limited [functional] limitation." R. 67-68. Dr. Kwock first opined Plaintiff's functional capacity would be "maybe frequent," (R. 68), but later opined Plaintiff could occasionally lift, handle, push, and pull with the upper extremities. R. 77, 79. In formulating Plaintiff's RFC, the ALJ determined Plaintiff could frequently handle and finger bilaterally. R. 15. Plaintiff maintains if the ALJ would have credited Dr. Kwock's opinion as to Plaintiff's occasional use of her bilateral extremities, she would have been found disabled. Pl.'s Br., p. 12.

In his opinion, the ALJ gave "some, but not great, weight," to Dr. Kwock's opinion because "there is clear indication that the claimant's carpal tunnel has improved to a significant degree since his review of the medical evidence of record and testimony in 2016." R. 23. In support of the weight assigned to Dr. Kwock's opinion, the ALJ explained there was full range of motion of the bilateral wrist with "no real evidence" of any problems with the bilateral wrist, and therefore the ALJ concluded Plaintiff's upper extremity impairments no longer restricted her to occasional use as opined by Dr. Kwock. R. 23.

Indeed, the notes from Plaintiff's treating orthopedic specialist, Dr. Donald Rosenbaum, confirm that as of January 5, 2017, Plaintiff's bilateral wrist pain had resolved,

and Plaintiff had full range of motion without tenderness or numbness. R. 1464. Dr. Rosenbaum's treatment plan at that time stated Plaintiff's wrists were doing well, with no need for intervention. R. 1464. Prior to Plaintiff's wrist issues in 2016, Dr. Rosenbaum opined in 2015 that Plaintiff could frequently finger and feel, as well as occasionally handle, and he noted her symptoms were improving. R. 1255-61. The ALJ accorded great weight to the opinion of Dr. Rosenbaum because he was Plaintiff's treating orthopedic specialist and because his opinion was consistent with his contemporaneous notes. R. 21. Plaintiff has not challenged the weight accorded Dr. Rosenbaum's opinion.

In further support, the ALJ cited recent records from Plaintiff's treating physician, Dr. Lucretia Baker, post-dating Dr. Kwock's testimony and documenting normal gait, normal neurological examination, normal psychiatric exam, normal extension of the bilateral extremities, and normal upper extremity and lower extremity strength, bilaterally. R. 23 (citing Ex. C-68F). Detailed examination of the cited exhibits confirms the same. R. 1561-62, 1565, 1568, 1570-71, 1574, 1576-77.

It matters not what she had reported to her general practitioner, argues Plaintiff, because the purpose of her visits to Dr. Baker were not to obtain treatment for her orthopedic or neurological problems, as those were treated by Dr. Rosenbaum and Dr. Joe Sam Robinson, a neurosurgeon. Pl.'s Br., p. 11. Notably, however, the diagnosis by Dr. Rosenbaum of transient synovitis in 2016 upon which Plaintiff relies, (R. 1466), pre-dates the January 2017 visit detailed above which show the wrist problems cited by Plaintiff in her brief had resolved. R. 1464. Additionally, functional limitations attendant to a diagnosis, not the mere existence of an impairment, guide the administrative analysis. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's]

9

ability to work or undermine the ALJ's determination in that regard."); see also Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005) (*per curiam*). In the Eleventh Circuit, "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citations omitted). Here, the record establishes Plaintiff was able to obtain treatment to resolve the pain in her wrists.

Furthermore, the record reflects Dr. Robinson's opinion concerning Plaintiff's ability to use her upper extremities, including a limit of lifting or carrying five pounds, also predates Dr. Rosenbaum's January 2017 notation that the pain in Plaintiff's wrists had resolved.[3] Compare R. 1380, 1452-54 with R. 1464. The ALJ also gave little weight to Dr. Robinson's 2016 opinion on Plaintiff's lifting, carrying, pushing, and pulling restrictions because they were temporary and appeared related to Plaintiff's recovery from a recent surgery. R. 21. Plaintiff has not challenged the weight accorded to Dr. Robinson's opinion.

Plaintiff's related, conclusory argument that the ALJ disregarded the AC's remand order requiring further consideration of Plaintiff's RFC and citation to specific record evidence in support also fails. Pl.'s Br., p. 12. Contrary to the evidence discussed above, as well as the ALJ's thorough review of the record medical evidence, (R. 20-25), Plaintiff argues "[t]here is no opinion evidence from any physician that indicates [she] is healed with her upper extremities or that she has any improvement." Id. Apparently, Plaintiff extrapolates from the

---

[3]Plaintiff's brief references a five-pound lifting and carrying limit imposed by Dr. Rosenbaum in 2016. Pl.'s Br., p. 12 (citing R. 1452-54). However, the pages cited appear to be from a medical source statement provided by Dr. Robinson, Plaintiff's neurosurgeon. To the extent Plaintiff intended to cite the five-pound lifting and carrying restriction imposed in 2015 by Dr. Rosenbaum, (R. 1255-61), as the ALJ explained, the statement clarified Plaintiff's symptoms were not expected to last for more than twelve months. Moreover, as explained above, Dr. Rosenbaum stated Plaintiff's wrist pain had resolved by 2017.

mistaken conclusion that there was no evidence supporting improvement that the ALJ did not follow the AC's instruction to cite to evidence in support of the RFC. Given the lack of detail in support of this conclusory argument, and given the extensive review of the medical record presented by the ALJ in formulating the RFC, the Court finds no basis for further consideration of this argument.

In sum, the Court cannot, as Plaintiff seemingly requests, re-weigh or apply a different interpretation to the record evidence than that applied by the Commissioner. Her select citations to various portions of the record which she believes could support a different interpretation of the evidence is not sufficient because the narrowly circumscribed nature of review does not involve re-weighing the evidence or substituting the judgment of the Court for that of the Commissioner. Moore, 405 F.3d at 1211, 1213. The ALJ explained his reasons for discounting Dr. Kwock's opinion and limiting Plaintiff to frequent, rather than occasional, handling and fingering with bilateral hands. The record provides substantial evidence in support, and Plaintiff's first issue provides no basis for remand.

### D.  Durational Requirement

In an argument that dovetails with her first assignment of error, Plaintiff argues if the ALJ did not find Dr. Kwock's opinion valid based on improvement subsequent to his 2016 testimony, then the ALJ should have considered a closed period of benefits. Pl.s Br., pp. 12-13. In support of the argument, Plaintiff does not provide any details beyond stating she had not worked since the original 2006 disability finding, "well over the statutory requirement for a closed-end period of disability of twelve months." Pl.'s Br., p. 13.

The Commissioner's regulations define disability as: "an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .

which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Stone v. Comm'r of Soc. Sec. Admin., 596 F. App'x 878, 879 (11th Cir. 2015) (*per curiam*) (recognizing twelve-month durational requirement). In the absence of any supporting detail for Plaintiff's argument, the Court is left to guess she contends if the ALJ discounted Dr. Kwock's opinion because of improvement after his 2016 testimony, then the ALJ should have considered a pre-testimony closed-period of benefits based on impairment(s) related to her wrists. Notably, the briefing order requires legal argument, supported by specific references to the record, and citations of legal authority. (Doc. no. 12, p. 2.) Plaintiff provides none.

However, even if the Court were to hypothesize the parameters of Plaintiff's argument, as the Commissioner points out, Plaintiff's reports of right wrist pain did not start until June 2015 and that pain was resolved in September 2015 after surgery. R. 1065, 1148, 1153, 1155. When she next complained of right, (R. 1425), as well as left, (R. 1362), wrist pain in 2016, it was resolved by January 5, 2017. R. 1464. Moreover, even when she did report pain, Plaintiff regularly exhibited intact grip strength and range of motion. R. 1148, 1155, 1166, 1171, 1178, 1433, 1438, 1443. The ALJ's decision thoroughly recounted Plaintiff's complaints of wrist pain and concomitant treatment. R. 20-23.

The record also reflects the ALJ specifically asked counsel about a closed period of disability, but counsel rejected consideration of that possibility. R. 109-10, 112.

As the ALJ summarized:

> I spoke with Counsel about the potentiality . . . of a closed period running about three years, from the time it was closed in November of 2012 to August 25th of 2015, when she had her carpal tunnel release. And [Counsel] stated, and the record will reflect it, that he felt that that was basically not acceptable.

R. 112. After Plaintiff specifically rejected consideration of a closed period of disability, the Court will not now assign error to the decision not to make such an award, particularly when the about-face request is bereft of any supporting detail. Plaintiff's second issue forms no basis for reversal or remand.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 23rd day of February, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA